Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529

*Attorney for Plaintiff and the Proposed Class*

Timothy J. Fransen, OSB No. 073938
tfransen@cosgravelaw.com
**COSGRAVE VERGEER KESTER LLP**
900 SW Fifth Avenue, 24th Floor
Portland, Oregon 97204
Telephone: (503) 323-9000
Facsimile: (503) 323-9019
[*Additional Counsel appear on signature page*]

*Attorneys for Defendant Denny's, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated, <br><br> Plaintiff <br><br> vs. <br><br> DENNY'S, INC. <br><br> Defendant | Case No. 3:26-cv-00342-JR <br><br><br> RULE 26(f) REPORT AND DISCOVERY PLAN |

**JOINT DISCOVERY PLAN**

Pursuant to Fed. R. Civ. P. 26(f), the parties hereby submit their joint discovery plan and

proposed deadlines for the Court's review and consideration:

1 - JOINT DISCOVERY PLAN

**(A)** **What changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made.**

The parties agree that there should be no changes made in the form or requirement for disclosures under Rule 26(a). The parties propose the following deadline to exchange Initial Disclosures: June 22, 2026.

**(B)** **The subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues.**

**Plaintiff:**

The Plaintiff anticipates that discovery will be needed on the requisites of FED. R. CIV. P. 23 to support his anticipated motion for class certification as well as on the merits of Plaintiff's claim to prepare for trial, or to oppose any summary judgment motion the Defendants may file. Plaintiff intends to seek discovery from Defendant or any identified third parties pertaining to (1) ESI regarding the alleged calls at issue in this case and any purported leads/sign ups related thereto, including the transmission of any Caller ID information; (2) email and other communications related to telemarketing calls and any relationship with a vendor that may have made calls for the Defendant; (3) ESI related to any purported consent to receive calls; (4) Defendant's policies and procedures concerning TCPA compliance; and (5) telephonic complaints received by Defendant and its responses thereto as the Plaintiff is seeking to certify the following classes:

**Telemarketing Caller ID Class:** All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls or text messages in a 12-month period, (3) which either (a) did not transmit a CPN or ANI at all or (b) transmitted a CPN or ANI that would not have allowed an individual to make a do not call request during regular business hours, (4) within the four years prior to the filing of the Complaint.

**Internal Do Not Call Class**: All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) (2) but who received more than one telemarketing call from or on behalf of Defendant promoting Defendant's goods or services, (3) who were not current customers of the Defendant at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint.

2 - JOINT DISCOVERY PLAN

Plaintiff is compelled to respond to Defendant's improper use of a routine Rule 26(f) discovery plan as a vehicle for *ad hominem* attack and unsworn merits argument of counsel unsupported by any evidence. A discovery plan addresses the subjects, timing, and mechanics of discovery. It is not an invitation to brief Defendant's gripes with Plaintiff or this litigation. Plaintiff responds briefly so that Defendant's invective does not stand unanswered.

As an initial matter, every case Defendant cites is completely inapposite. Not one involves Mr. Weingrad, Denny's, the telephone number at issue, the text messages at issue, or the claims at issue in this litigation. *Wilson v. Freeway* involved a different plaintiff who voluntarily dismissed a different case against a different defendant, and the docket entries Defendant cites are unadjudicated filings and allegations, not judicial findings of anything. *Taylor*, *Reimer*, and *McClain* fare no better. Defendant cites these cases, by other plaintiffs, against other defendants, in other districts, without identifying a *single holding* adverse to Plaintiff from any of them, because there is none to identify. And *Wuest* concerned allegedly improper motives of a different Plaintiff and different counsel. In short, Defendant's "authority" amounts to guilt by association with the dockets of strangers who have also filed TCPA litigation. That a string cite of irrelevant cases involving unrelated litigants is the best Defendant could muster speaks volumes about the substance of its position.

Defendant's refrain that none of Plaintiff's prior classes "has been certified" is equally hollow. TCPA cases are not certified for any variety of reasons. Defendant does not, because it cannot, cite a single decision denying certification of a class proposed by Mr. Weingrad, finding any of his claims "manufactured," or sanctioning him. This is to say nothing of Judge Simon refusing to strike Mr. Weingrad's class claims in other litigation. *Weingrad v. DaBella Exteriors, LLC*, No. 3:25-CV-396-SI, 2026 WL 496609, at *6 (D. Or. Feb. 23, 2026). Cases resolve before certification for any number of reasons, and the absence of a certification ruling is not a scarlet letter. More fundamentally, Congress deliberately enlisted private citizens to enforce the TCPA,

3 - JOINT DISCOVERY PLAN

and courts have squarely rejected the notion that a litigant's willingness to repeatedly enforce the law against repeated lawbreakers renders him inadequate. *See Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) (rejecting "professional plaintiff" attack); *Sapan v. Yelp, Inc.*, No. 3:17-cv-03240-JD, 2021 WL 5302908, at *4 (N.D. Cal. Nov. 15, 2021) (noting "professional litigant" criticisms against named plaintiffs are "not uncommon" and "rarely well taken."); *Wilson v. Skopos Fin., LLC*, No. 6:25-CV-00376-MC, 2026 WL 810636, at *2 n.4 (D. Or. Mar. 24, 2026) ("While the record suggests that Plaintiff is an inveterate TCPA litigant, Defendant has not offered support for the proposition that he is without standing on that basis.") (McShane, J.). The volume of Mr. Weingrad's litigation reflects the volume of illegal telemarketing that is sent to him, nothing more.

Defendant's emphasis on Plaintiff's purported "refusal" to reply "STOP" is not a defense. The TCPA and the FCC's implementing regulations place the burden of compliance on the seller, not the consumer, nothing in the law obligates a consumer to opt out of telemarketing messages he never consented to receive in the first place, and the failure to do so is neither consent nor a defense. To the contrary, under the very regulation Defendant invokes, prior express invitation or permission must be evidenced by a signed, written agreement with the subscriber. 47 C.F.R. § 64.1200(c)(2)(ii). Defendant conspicuously does not claim to possess any such agreement from Mr. Weingrad. It instead attributes the purported enrollment to an unidentified "someone." Who that "someone" was, whether any valid consent ever existed, and what Defendant and its vendors did, or failed to do, to comply with the law are precisely the questions discovery exists to answer. For that matter, any purported consent is irrelevant to the Plaintiff's caller ID claims, for which purported consent is no defense. *Starling v. HomeOver General Contractors*, No. 4:25-CV-993-JDK, 2026 WL 1649101, at *5 (E.D. Tex. June 8, 2026).

4 - JOINT DISCOVERY PLAN

**Defendant:**

In this putative class action, Plaintiff alleges that Denny's sent him telemarketing text messages without consent in purported violation of the do-not-call (DNC) provisions of the TCPA, which are intended to protect residential, non-business phone numbers. *See* 47 U.S.C. § 227(c); 47 C.F.R. §§ 64.1200(c)(2), 64.1601(e). This is not a typical case, however. Instead, it is the latest of more than 35 federal TCPA class action lawsuits Mr. Weingrad has filed—none of which has been certified—and it bears the same suspicious hallmarks that recur throughout his filings: the use of telephone numbers with irregular enrollment and ownership histories (including numbers tied to prior subscribers and submitted under names other than his own), pleadings asserting venue in fora disconnected from his Oregon residence, and a consistent refusal to use the simple "STOP" opt-out before suing. These patterns suggest a litigation practice aimed at extracting in terrorem settlements rather than vindicating genuine injury—for himself or for the classes he purports to represent.

As background, Denny's does not engage in cold calling or send random text messages. Rather, it only sends messages to phone numbers that have affirmatively enrolled in Denny's texting program and consented to Denny's terms, which contain an arbitration provision. That is what happened here. Denny's received a request from someone using Plaintiff's (503) number to receive messages from Denny's and then accommodated that request—advising in every text that the consumer could simply reply "STOP." Compl., ECF No. 1, ¶¶ 17, 33.

Plaintiff nonetheless claims that he received "wrong number" texts on a phone number he purportedly uses for "residential," non-business reasons. But he never replied "STOP." He instead went out of his way to *avoid* replying "STOP," all but ensuring that the texts would continue. That was intentional. As explained above, Plaintiff has filed dozens of TCPA class actions in Pennsylvania and Oregon, many of which follow the same fact pattern as here—a pattern that has been associated

5 - JOINT DISCOVERY PLAN

with baseless lawsuits in other matters. *See, e.g.*, *Wilson v. Freeway Ins. Servs. of Am., LLC*, No. 6:25-cv-1869 (D. Or. Oct. 12, 2025), ECF Nos. 19, 20 (moving to voluntarily dismiss a serial TCPA litigant's similar "wrong number" case after the defendant filed a motion to deny certification exposing potential fraud); *Taylor v. Milan Laser Corp.*, No. 3:26-cv-18 (M.D. Ga. Feb. 10, 2025); *Reimer v. Medigap Life*, No. 1:23-cv-00683 (E.D. Va. July 26, 2023); *McClain v. DH Ins. Grp., LLC*, No. 1:25-cv-24177 (S.D. Fla. Nov. 20, 2025). Not one of the putative classes in any of those cases has been certified. And defendants in many of Plaintiff's cases have challenged his allegations on grounds that apply here, too—including his use of the number for business reasons and his standing to sue over text messages he invited and wanted.

All of this raises serious questions about whether Plaintiff is simply "using the threat of class actions to extract an undeserved premium on [] individual claim[s]," *Wuest v. My Pillow, Inc.*, 2019 WL 3577176, at *3 (N.D. Cal. Aug. 6, 2019) (finding putative class representative inadequate where he filed 10 putative class actions and settled them all individually for higher than the value of his individual claims), and whether Plaintiff is an adequate or typical representative, *see Wilson*, 6:25-cv-1869, ECF Nos. 19, 20 (plaintiff seeking to dismiss his own case with prejudice after his inadequacy and atypicality were brought to light); *Hudson-Bryant v. OCMBC Inc.*, 2026 WL 1507407, at *7 (C.D. Cal. May 27, 2026) (denying class certification in a TCPA case on typicality and adequacy grounds where "issues and defenses unique to Plaintiff threaten to become the focus of th[e] litigation," including disputes over whether the plaintiff owned the number, whether the number was registered in her name, and whether she consented—issues that would force the plaintiff to "devote too much attention to rebutting an individual defense" "at the expense of [her] ability to vigorously prosecute th[e] case on behalf of the rest of the class") (quotations omitted).

For these reasons, Defendant anticipates that discovery will be needed on the following topics:

- whether the telephone number at issue was enrolled in Denny's texting program or otherwise opted in to receive text messages, and the circumstances of that enrollment, including who submitted the number, under what name, and when;

- whether Plaintiff, or a prior or other user or subscriber of the number, consented to or invited the text messages and agreed to Denny's applicable terms and conditions, including an arbitration provision and class-action waiver;

- whether and when the number was reassigned to Plaintiff, and any prior consent, inquiry, or established business relationship associated with the number;

- whether Plaintiff uses the number for residential purposes or holds it out for business use, including the history of its use and registration;

- whether Plaintiff ever made a valid do-not-call request—including whether he used the "STOP" opt-out as expressly provided in each message—and whether he received any actionable messages thereafter;

- whether the text messages were actionable "telephone solicitations" as defined by the TCPA's do-not-call (DNC) rules;

- whether Plaintiff suffered any concrete injury sufficient to confer Article III standing, including whether the messages he challenges were invited or manufactured;

- whether Plaintiff can satisfy the requirements of Rule 23(a) and 23(b)(2) and/or (b)(3)—numerosity, commonality, typicality, adequacy, predominance, and superiority—including whether his claims are typical of, and whether he can adequately represent, the putative class; and

- whether the classes Plaintiff seeks to certify are ascertainable and otherwise certifiable on the facts alleged.

**(C)** **Any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced.**

The parties have discussed document preservation and believe that limited electronically stored information ("ESI") may be produced in this case. The parties acknowledge, further, that requests for ESI, and responses to those requests, must be reasonably targeted, clear, and as specific as practicable. Should any dispute concerning ESI arise during the pendency of this matter, the parties have agreed to meet and confer before seeking intervention from the Court. The

7 - JOINT DISCOVERY PLAN

parties will endeavor to produce ESI in its native form or in unitized, fixed image format (e.g., .pdf or .tiff), and will discuss alternatives as needed. The parties do not anticipate any issue regarding electronically stored information.

**(D) Any issues about claims of privilege or of protection as trial-preparation materials, including the timing and method for complying with Rule 26(b)(5)(A) and—if the parties agree on a procedure to assert these claims after production—whether to ask the court to include their agreement in an order under Federal Rule of Evidence 502.**

The parties agree that if a receiving party believes that privileged or protected material may have been inadvertently disclosed or produced, said party will advise the producing party and proceed as required if such party asserts inadvertent disclosure. The parties agree that the recall, sequester, or return of any privileged or protected material is without waiver of the right to contest the claim of privilege or protection. The parties agree the mere fact of an inadvertent disclosure is not sufficient to waive any claim of privilege or protection. Before any party makes a motion to compel or challenges the claim of privilege, protection, or inadvertence of production or disclosure, the parties shall meet and confer regarding the challenge and attempt to resolve the dispute. The parties intend for their agreement to be considered an order pursuant to Federal Rule of Evidence 502(d). The parties agree that the standard Federal Rule of Evidence 502(b) applies to resolve any dispute about the inadvertence of a production or disclosure.

The parties anticipate that there will be a need for some discovery in this case to be governed by a protective order. The parties shall confer regarding the terms of such a protective order and will endeavor to reach agreement on those terms. If the parties disagree concerning the scope or form of a protective order, the party or parties seeking such an order may raise the issue with the Court in accordance with the Federal Rules of Civil Procedure, Local Rules and/or any other orders of the Court.

**(E)  What changes should be made in the limitations on discovery imposed under the Fed. R. Civ. P. or by local rule, and what other limitations should be imposed.**

At this time, the parties agree that there should be no changes or deviations from the Federal Rules of Civil Procedure or Local Rules of this Court concerning limitations on discovery. The parties reserve the right to request such changes as the case develops. The parties agree to electronic service of discovery documents, pursuant to section (G) below.

**(F)  Any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).**

The parties do not currently anticipate the need for any other orders, other than those referred to herein.  Should the need for other orders arise, the parties will confer in good faith and, if they cannot agree, will raise the issue with the Court for resolution.

**(G)  Electronic service:**

The parties agree that pursuant to Rules 5(b)(2)(E) and 6(d) of the Federal Rules of Civil Procedure any pleadings or other papers may be served by sending such documents by email to the email address(es) listed below (or any updated email address provided to all counsel of record). If an error or delayed delivery message is received by the sending party, that party shall promptly (within one business day of receipt of such message) notify the intended recipient of the message and serve the pleading or other papers by other authorized means.

**(H)  Magistrate Judge:**

The parties have consented to a Magistrate Judge.

**(I)  Proposed scheduling deadlines:**

1.  Initial Disclosures: **June 22, 2026**

2.  Amend Pleadings and Add Parties: **August 31, 2026**

3.  Initial Expert Disclosure Deadline: **January 15, 2027**

4.  Rebuttal Expert Deadline: **March 12, 2027**

9 - JOINT DISCOVERY PLAN

5.   Expert Deposition Cutoff: **April 5, 2027**

6.   Plaintiff's Class Certification Motion: **April 19, 2027**

7.   Defendant's Class Certification Opposition: **May 19, 2027**

8.   Discovery Cutoff: **June 1, 2027**

9.   *Daubert* and Dispositive Motions: **90 days after the Court's ruling on class certification, and/or, if a class is certified, after completion of the class notice period, given the prohibition against one-way intervention.**

Respectfully submitted this 12th day of June, 2026.

*/s/ Draft*
Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529

*Attorney for Plaintiff and the Proposed Class*

*/s/ Draft*
Matthew A. Keilson (*Pro Hac Vice*)
mkeilson@wtlaw.com
Rebecca Rhym (*Pro Hac Vice*)
rrhym@wtlaw.com
**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (678) 372-0408

Timothy J. Fransen, OSB No. 073938
tfransen@cosgravelaw.com
**COSGRAVE VERGEER KESTER LLP**
900 SW Fifth Avenue, 24th Floor
Portland, Oregon 97204
Telephone: (503) 323-9000
Facsimile: (503) 323-9019

*Attorneys for Defendant Denny's, Inc.*

10 - JOINT DISCOVERY PLAN